# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**H. SCOT LYMAN, et al.,**

        Plaintiffs,

        -vs-                                      **Case No. 05-C-122**

**ST. JUDE MEDICAL S.C., INC.,**

        Defendant.

## DECISION AND ORDER

The plaintiffs, H. Scot Lyman ("Lyman") and Cardiostat Medical, LLC ("Cardiostat"), allege claims for breach of contract and wrongful termination against St. Jude Medical, S.C. ("St. Jude"). In November 2002, Lyman and St. Jude executed a ten-year Representative Agreement which permitted Lyman to market, distribute and sell St. Jude's cardiac pacemakers and defibrillators to physicians and hospitals in southeastern Wisconsin. The relationship deteriorated starting in September 2004. On January 19, 2005, St. Jude terminated its agreement with Lyman.

The plaintiffs brought suit on January 31, 2005. On March 1, 2005, the plaintiffs filed a motion to disqualify James Gale ("Gale"), Barbara Janaszek ("Janaszek"), and their respective law firms from representing St. Jude in this action. *See Lyman v. St. Jude Medical S.C., Inc.*, 423 F. Supp. 2d 902 (E.D. Wis. 2006). The Court granted the motion and held that there was a substantial relationship between this case and a prior litigation in which the plaintiff (H. Scot Lyman) and St. Jude were co-parties. *Id.* at 913. The "prior litigation" was

a 2002 action in which Gale and Janaszek represented Lyman and St. Jude against Guidant Sales Corporation, Lyman's previous employer. That case was brought to extricate Lyman from a non-compete agreement with Guidant so Lyman could work for St. Jude under the Representative Agreement.

Now before the Court is the plaintiffs' motion to compel the production of documents withheld on the grounds of attorney-client privilege and the work product doctrine. Plaintiffs' motion was brought after reviewing St. Jude's privilege log (and revised privilege log), which revealed the existence of a variety of emails between and among Gale (St. Jude's now-disqualified counsel), Paul Bae (St. Jude's in-house legal counsel), and Ronald Rolnick (same).[1] These emails, exchanged in December 2004/January 2005, all refer to Lyman in some manner and pre-date the termination of the Representative Agreement (1/19/05) and the filing of this lawsuit (1/31/05).

For the reasons that follow, the Court finds that these documents are protected from disclosure under the attorney-client privilege.

"The attorney-client privilege is one of the oldest recognized privileges for confidential information." *Swidler & Berlin v. United States*, 524 U.S. 399, 403 (1998) (citing *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981)). The privilege is intended to "encourage 'full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of justice.'"

---

[1] These emails are described as follows: (1) 12/9/04 e-mail re letters sent to Mr. Lyman; (2) 12/17/04 email with information relative to incidents involving Scot Lyman; (3) 1/13/05 email re letter to Lyman; and (4) 1/14/05 email re letter to Lyman. (Docket No. 98-2; Docket No. 108, ¶ 4).

-2-

*Id.* Under the privilege, the client may "refuse to disclose and . . . prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client: between the client or the client's representative and the client's lawyer or the lawyer's representative . . . ." Wis. Stat. § 905.03(2).

It is undisputed that the basic elements of the privilege are met with respect to the withheld documents. However, plaintiffs argue that the privilege was waived by virtue of Gale's violation of a variety of ethical rules. Plaintiffs' argument presumes that Gale communicated confidential information to St. Jude about Lyman in the December 2004/January 2005 emails, a presumption supported in some manner by the Court's previous opinion: "The Court finds that it is likely that Lyman shared confidential information, related to his employment, customers, and services, with his former counsel (now St. Jude's current counsel) during the prior litigation." *Lyman*, 423 F. Supp. 2d at 912.

However, even if Gale revealed client confidences in violation of his ethical duties,[2] the attorney-client privilege belongs to, and can only be waived by, the client – St. Jude. *Borgwardt v. Redlin*, 196 Wis. 2d 342, 538 N.W.2d 581 (Ct. App. 1995) ("The attorney-client privilege belongs to the client. The client is therefore the privilege's 'holder'"); *Harold Sampson Children's Trust v. The Linda Gale Sampson 1979 Trust*, 2004 WI 57, ¶ 46, 271 Wis. 2d 610, 679 N.W.2d 794 ("a lawyer, without the consent or knowledge of a client, cannot waive the attorney-client privilege").

---

[2] The Court makes no finding in this regard. Indeed, without seeing the withheld documents, the Court has no way of knowing if Gale acutally violated his ethical duties to Lyman.

Plaintiffs' attempt to impute Gale's (alleged) misconduct to St. Jude is beside the point. Even if St. Jude somehow knew that Gale was violating his ethical duties by communicating confidential information about Lyman, St. Jude did not thereby waive its privilege to communicate freely with Gale. Gale was still St. Jude's attorney at that time, and St. Jude owed no ethical duties to the plaintiffs.

Plaintiffs cite a variety of cases for the general proposition that an attorney's unethical or unprofessional conduct can waive the protections of the attorney-client and work-product privileges. However, none of these cases are on point because they apply the exception to the work-product doctrine, not the attorney-client privilege. *See Moody v. IRS*, 654 F.2d 795, 800 (D.C. Cir. 1981) (applying exception to work product doctrine); *Parrott v. Wilson*, 707 F.2d 1262, 1272 (11th Cir. 1983) (same); *Jones v. Ada S. McKinley Community Servs.*, 1989 WL 152352 at *3 (N.D. Ill. 1989) (same). This is not surprising given that the work-product doctrine belongs to both the client *and the attorney*, whereas the attorney-client privilege belongs to and can only be waived by the client.[3] *See In re ANR Advance Transp. Co., Inc.*, 302 B.R. 607, 616 (E.D. Wis. 2003) (citing *In re Special September 1978 Grand Jury*, 640 F.2d 49, 62 (7th Cir. 1980)).

---

[3] The only case which arguably applies the exception to the attorney-client privilege is *Blanchard v. EdgeMark Fin. Corp.*, 192 F.R.D. 233, 241 (N.D. Ill. 2000). The *Blanchard* court allowed an *in camera* review to determine whether certain documents should be disclosed on account of unspecified unethical behavior. The Court is unable to evaluate the context in which this action was taken, likely because the court in *Blanchard* assumed "familiarity with the background" of the case. *Id.* at 235. However, it appears that the documents were relevant in some way to the litigation, possibly pursuant to that court's understanding or application of the "at issue" doctrine discussed below. *See id.* at 242 ("the documents sought to be produced, and which this Court has ordered be made available *in camera*, *may contain the information Plaintiff needs*") (emphasis added).

-4-

Accordingly, the Court cannot endorse the extraordinary remedy requested by the plaintiffs. As one court explained, "disclosure is not the sole available remedy for a breach of a professional duty, and may in fact bear so little relationship to the underlying breach as to be inappropriate as a remedy." *Moody*, 654 F.2d at 801 n.23. In other words, Lyman is free to pursue alternative remedies against Gale with respect to the alleged ethical violations.

Plaintiffs also argue for waiver because the communications are likely relevant to St. Jude's defense of this matter. However, under Wisconsin's "at issue" doctrine,[4] the attorney-client privilege can only be waived when the privilege holder "attempts to prove a claim or defense *by disclosing or describing an attorney-client communication*." *State v. Hydrite Chem. Co.*, 220 Wis. 2d 51, 59, 582 N.W.2d 411 (Ct. App. 1998) (emphasis added). There is no indication that St. Jude is or will be expressly relying on Gale's advice or communications in establishing a defense in this matter. *See, e.g., Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987) (a defendant "must do more than merely deny a plaintiff's allegations" to waive the privilege under the at issue doctrine). To the extent that St. Jude relies on these (or any other) communications, the Court may be forced to re-visit the issue in the future.

Finally, plaintiffs argue that St. Jude's invocation of the work product doctrine constitutes a waiver because it indicates that the withheld documents are relevant to this litigation. While possibly relevant in a general sense, communications or documents

---

[4] In a diversity case, state law governs issues concerning attorney-client privilege. *See Pyramid Controls, Inc. v. Seimens Industrial Automations, Inc.*, 176 F.R.D. 269, 271 (N.D. Ill. 1997) (applying Illinois law to diversity case governed by Illinois state law).

generated in anticipation of litigation (work product) do not necessarily satisfy the narrow "at issue" standard.

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT**:

1. Plaintiffs' motion to compel [Docket No. 96] is **DENIED**.

2. On **July 17, 2007**, at **9:30 a.m. (CST)**, the Court will conduct a telephonic conference call in this matter. The purpose of the call is to change the dates for the final pre-trial conference and trial. Please be available at that time. The Court will initiate the call.

Dated at Milwaukee, Wisconsin, this 18th day of June, 2007.

                                        **SO ORDERED,**

                                        **s/ Rudolph T. Randa**
                                        **HON. RUDOLPH T. RANDA**
                                        **Chief Judge**